# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| AIMEE LACOUR | Civil Action No. 6:20-0847 |
| versus | Judge Michael J. Juneau |
| AMERIGAS PROPANE, L.P., ET AL. | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Rule 12(b)(6) Motion to Dismiss filed by defendant Louisiana CVS Pharmacy, LLC ("CVS") [Doc. 6]. The motion is opposed by the plaintiff, Aimee Lacour [Doc. 13], and CVS filed a reply brief [Doc. 16]. After review of the briefs and the applicable law, the undersigned RECOMMENDS that the motion to dismiss be GRANTED.

## I. BACKGROUND

This products liability lawsuit arises out of a May 29, 2019 incident in which the plaintiff was allegedly injured after the malfunction of a propane tank manufactured by defendant AmeriGas and purchased from CVS. The plaintiff filed the instant lawsuit in the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana against CVS and AmeriGas, and AmeriGas removed the action to this Court on July 2, 2020 with the consent of CVS.

Plaintiff alleges that on the date in question, she exchanged a discharged AmeriGas propane tank for a new propane tank at a CVS Pharmacy in Lafayette. In her original Petition, the plaintiff specifically alleged the following facts:

> The propane tanks offered for sale at the CVS Pharmacy were owned, filled and marketed by AmeriGas. While connecting the new tank to her barbeque grill, the tank suddenly and without warning released propane, which ignited and caused a fire that resulted in personal injury and property damage. **AmeriGas was the manufacturer of the propane tank.** It filled the tank and prepared it for sale. AmeriGas placed the propane tank into commerce, labeled the tank as its own, controlled all aspects of the design, construction and qualities of the tank and its gas releasing valves. AmeriGas' employees were solely responsible for ensuring that the tank was properly prepared and safe for use. Upon information and belief, AmeriGas placed the tank in the locked cage outside of the CVS Pharmacy store, where it sat, unchanged, until it was sold on May 29, 2019. **CVS Pharmacy sold the dangerous and defective propane tank which suddenly and without warning released an uncontrolled spray of propane gas, which ignited in an uncontrolled propane fire and caused injuries to Aimee Lacour.** The tank contained non-apparent characteristics which rendered it defective and unreasonably dangerous. The tank was unreasonably dangerous in construction and composition. AmeriGas failed to perform proper filling and maintenance of the tank. AmeriGas failed to discover or disclose the hidden dangerous condition of the tank, failed to ensure it was safe for ordinary use, and failed to properly inspect the tank prior to it being offered for sale. AmeriGas and CVS are solidarily liable for the resultant damages.[1]

In her original Petition, the plaintiff does not state the basis in law for her claims against either AmericaGas or CVS. She merely alleges that AmeriGas is liable for manufacturing a defective product that caused her injury, and that CVS is

---

[1] *See* state court *Petition, R. 1-2, at ¶¶ 2-14* (internal citations omitted) (emphasis added).

liable for selling that defective product to her. She further alleges that both defendants are solidarily liable for her damages. AmeriGas removed the matter to this Court on July 2, 2020 on grounds diversity jurisdiction exists in this case under 28 U.S.C. 1332.

In the instant motion, CVS seeks dismissal of the claims against it on grounds the plaintiff fails to state a claim under any viable theory of liability, including the LPLA and the Louisiana law of negligence. In essence, CVS argues that plaintiff's claims arise from damages caused by the malfunction of an allegedly defective propane tank. CVS further argues the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, "establishes the exclusive theories of liability for manufacturers for damage caused by their products," La. R.S. 9:2800.52, and there can be no claim alleged against the seller of the allegedly defective product, except in factual scenarios which do not exist in this case.

## LAW AND ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded

facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

The law is well-settled that a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." La. R.S. 9:2900.52. Furthermore, "Louisiana law is clearly established that the Legislature intended the LPLA to be the exclusive remedy against drug and product manufacturers." *Kuhfahl v. DJO LLC*, No. 18-00070, 2018

WL 1698311 at *2 (W.D. La. Mar. 19, 2018). *See also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) ("[t]he [LPLA] provides that it is the exclusive remedy for products liability suits, stating that "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.").

The LPLA provides the following definitions for manufacturer and seller:

(1) "Manufacturer" means a person or entity who is in the business of manufactuing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

    (a) A person or entity who labels a product as his own or who otherwise holds himself out t(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

    (b) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

    (c) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer"

5

>is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.
>
>(2) "Seller" means a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.

La. R.S. 9:2800.53.

Thus, the exclusive remedy against a manufacturer is a claim under the LPLA. Because CVS is not the manufacturer of the propane tank at issue, "any responsibility for tort damages it may have would necessarily arise under its role as a non-manufacturing seller." *Ayala v. Enerco Group, Inc.,* 569 Fed.Appx. 241, 245 (5th Cir. 2014), *citing Alexander v. Toyota Motor Sales, U.S.A.*, 123 So.3d 712, 714 (La. 2013). Under Louisiana tort law, to establish the liability of a non-manufacturing seller of a product, "three requirements must be met: First, the product sold by [CVS] must be defective. Second, [CVS] must have had actual or constructive knowledge that the product it sold was defective. Lastly, [CVS] must have failed to declare the defect." *Id.* In *Zehner v. Nordskog Indus., Inc.*, 1992 WL 233984, at *3 (E.D. La. Sept. 2, 1992), the court explained:

>There is no duty, however, for a non-manufacturer seller to inspect a product prior to sale to determine the possibility of inherent vices or defects. *Nelton v. Astro–Lounger Mfg. Co.,* 542 So.2d 128, 131 (La. App. 1 Cir.1989). Moreover, such a seller has no independent duty to warn or instruct purchasers in the proper use of a product. *Delanzo v. ABC Corporation,* 572 So.2d 648, 651 (La. App. 5 Cir.1990).

6

The caselaw is clear that, "unlike a manufacturer, a non-manufacturing seller of a product is not presumed to have knowledge of a product's vices, and it is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product." *Diaz v. Goodyear*, 2008 WL 4528186, at *6 (M.D. La. Oct. 12, 2008) (citations omitted). Further, "[b]ecause [a non-manufacturer seller] ha[s] no duty to inspect for such defects, it likewise ha[s] no duty to warn of hidden defects or to maintain/remedy such defects." *Id*. "The imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility." *Jackson v. Sears Authorized Retail Dealer*, 36,166, p. 5 (La. App. 2 Cir. 6/12/02), 821 So. 2d 590, 593.

In *Ayala*, a consumer was killed after a propane heater exploded in his shed. The heater was purchased from a Louisiana retailer; it was manufactured by two non-Louisiana corporations. The consumer's widow brought a products liability action in Louisiana state court against the manufacturers and the retailer that sold the heater to her husband. The non-Louisiana corporations removed the matter to federal court, contending that the Louisiana retailer was improperly joined, and there would be complete diversity of citizenship once the retailer was dismissed. Plaintiff moved to remand. The corporations argued that, as the non-manufacturer retailer of the propane heater, the Louisiana defendant could only be liable for damages in tort

if it knew or should have known that the product was defective and failed to notify the consumer of the defect; plaintiff had not made such an allegation. *Ayala*, 569 Fed. Appx. at 243.

The federal district court denied the motion to remand and dismissed the claims against the Louisiana retailer, finding no reasonable basis to predict that a state court would allow recovery. *Id.*[2] On appeal, the Fifth Circuit first examined the LPLA as the exclusive remedy against manufacturers for damages caused by their products, and the court determined that the LPLA does not provide a cause of action against non-manufacturing sellers, and thus plaintiff could not allege a viable cause of action against the Louisiana retailer under the LPLA. *Id.* at 245.

Here, in her original Petition, the plaintiff only alleged that CVS sold her the propane tank, and that AmeriGas filled the tank and placed it in the cage outside the CVS store, "where it sat, unchanged, until it was sold." The plaintiff amended her complaint on July 27, 2020 [Doc. 12] and now alleges there may be a contract between AmeriGas and CVS whereby CVS has joint responsibility for manufacturing, filling and safely preparing the propane tanks at issue; both AmeriGas and CVS manufactured, marketed, and distributed the propane tank at

---

[2] Plaintiff's remaining products liability claims against the manufacturers were thereafter dismissed on summary judgment. 569 Fed. Appx. at 243.

issue;[3] CVS had a separate duty to ensure that the propane tank was not damaged or altered prior to sale, and did not properly inspect the tank prior to its being sold; and CVS failed to perform proper maintenance on the tank prior to sale. Notably, in her Amended Complaint, the plaintiff does not allege that CVS had actual or constructive knowledge that the propane heater it sold was defective.

CVS references the plaintiff's Amended Complaint in its Reply brief and argues the plaintiff's new allegations are "conclusory and insufficient to state a cognizable cause of action against CVS." After a review of the applicable law, the undersigned agrees. The plaintiff has not alleged that CVS knew or should have known the tank was defective, and she fails to support her allegation that CVS had a duty to inspect the propane tanks prior to sale or warn of hidden defects under any provision of Louisiana law. Louisiana law, in fact, provides that there is no duty for a non-manufacturer seller to inspect a product prior to sale to determine the possibility of inherent vices or defects, and that a seller has no independent duty to warn or instruct purchasers in the proper use of a product. See *Zehner v. Nordskog Indus., Inc.,* 1992 WL 233984, at *3 (E.D. La. Sept. 2, 1992).

---

[3] Importantly, these claims are contradicted by the plaintiff's other allegations in the Amended Complaint that "[t]he propane tanks offered for sale at CVS Pharmacy were owned, filled, and marketed by AmeriGas" and that "AmeriGas is believed to have been the manufacturer of the propane tank. . . . AmeriGas filled the tank and prepared it for sale." *R. 12,* ¶¶ *4, 9.*

Because the plaintiff has made only conclusory and unsupported allegations that CVS was negligent, and because she has failed to allege actual or constructive knowledge that the propane heater it sold was defective, she fails to state a viable claim against CVS under Louisiana law. Therefore, the undersigned concludes that, even considering the new allegations raised by CVS in its Amended Complaint, the plaintiff fails to sufficiently allege a claim against CVS for which relief can be granted.

Considering the foregoing, CVS's motion to dismiss should be GRANTED.

### III. CONCLUSION

Thus, for the reasons stated herein, IT IS RECOMMENDED that the Rule 12(b)(6) Motion to Dismiss filed by defendant Louisiana CVS Pharmacy, LLC ("CVS") [Doc. 6] be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

  **THUS DONE AND SIGNED** this 12th day of November, 2020 at Lafayette, Louisiana.

                     CAROL B. WHITEHURST
                      UNITED STATES MAGISTRATE JUDGE